Ingram, Comr. of Insurance v. Insurance Co.

STATE OF NORTH CAROLINA, ON RELATION OF JOHN RANDOLPH ING-
RAM, COMMISSIONER OF INSURANCE OF NORTH CAROLINA, PLAIN-
TIFF v. RESERVE INSURANCE COMPANY, DEFENDANT AND NORTH
CAROLINA INSURANCE GUARANTY ASSOCIATION THIRD-PARTY
PLAINTIFF AND PHILIP R. O'CONNOR, AS DIRECTOR OF INSURANCE
OF THE STATE OF ILLINOIS AND AS DOMICILIARY RECEIVER OF
RESERVE INSURANCE COMPANY THIRD-PARTY DEFENDANT AND
ROBERT P. BINKLEY, BENJAMIN T. SIMMONS, JR., WALLACE GRA-
HAM GETCHELL, AND ARNOLD ENGLAND, INDIVIDUALLY AND AS
REPRESENTATIVES OF THE POLICYHOLDERS OF RESERVE INSUR-
ANCE COMPANY WHO ARE CITIZENS OR RESIDENTS OF NORTH
CAROLINA OR WHO HOLD POLICIES ISSUED UPON PROPERTY IN
NORTH CAROLINA, AND CAROLINA INSURANCE SERVICE, INC.
THIRD-PARTY PLAINTIFFS

No. 7910SC1038
(Filed 16 September 1980)

Insurance § 1– insolvent insurer — deposit — payment to Guaranty Association —
retroactivity of statute

The Quick Access Statute, G.S. 58-155.60, which requires that deposits
made by an insolvent casualty insurer be paid to the N.C. Insurance Guaran-
ty Association for use in paying claims against the insolvent insurer, is to be
applied retroactively to deposits made before the date of its enactment and
to the holders of policies issued prior to that date. However, claimants
against the deposit of a foreign insurer under G.S. 58-185 will retain their
lien rights after payment of the deposit to the Guaranty Association and
may proceed against the Guaranty Association to the extent of the deposit
for any claims they have under G.S. 58-185 which are not paid by the Guaran-
ty Association pursuant to G.S. Ch. 58, Art. 17B.

APPEAL by third-party plaintiff, North Carolina Insurance
Guaranty Association, from Hobgood, Judge. Judgment entered
6 July 1979 in Superior Court, WAKE County. Heard in the Court
of Appeals 23 April 1980.

This action arose from the insolvency of Reserve Insurance
Company, an Illinois Corporation doing business in North Caro-
lina. The North Carolina Commissioner of Insurance was
appointed Ancillary Receiver for Reserve on 31 May 1979.
North Carolina Insurance Guaranty Association intervened
and prayed that the Ancillary Receiver be ordered to deliver to
the Guaranty Association a deposit of $185,000.00 which Re-
serve had delivered to the State Treasurer pursuant to Article
20 of Chapter 58 of the North Carolina General Statutes. Robert
P. Binkley and the other individual third-party plaintiffs inter-

vened on their own behalf and on behalf of other individuals as policyholders with Reserve. Carolina Insurance Service, Inc. intervened as general agent in North Carolina for Reserve. The third-party plaintiffs, other than the Guaranty Association, prayed that the court declare that the policyholders of Reserve had a lien on the $185,000.00 deposit superior to the claim of the Guaranty Association and that the deposit not be delivered to the Guaranty Association. On 6 July 1979 the superior court held that the statute under which the Guaranty Association claimed the deposit should not be construed to apply retroactively and the policy holders of Reserve had a lien superior to the claim of the Guaranty Association. The superior court ordered the Guaranty Association's claim to the deposit be denied. The Guaranty Association appealed.

*Attorney General Edmisten, by Assistant Attorney General Richard L. Griffin, for plaintiff appellee State of North Carolina, on relation of John Randolph Ingram, Commissioner of Insurance of North Carolina.*

*Allen, Steed and Allen, by Arch T. Allen III and Ann Hogue Pappas, for third-party plaintiff appellant North Carolina Insurance Guaranty Association.*

*Craige, Brawley, Liipfert and Ross, by Cowles Liipfert, C. Thomas Ross and Terrie A. Davis, for Carolina Insurance Service, Inc., Robert P. Binkley, Benjamin T. Simmons, Jr., Wallace Graham Getchall, Arnold England and the North Carolina policyholders of Reserve Insurance Company.*

WEBB, Judge.

This appeal involves the interpretation of several statutes enacted in regard to the insurance industry for the protection of the public in this state. The General Assembly in 1909 enacted Article 20 of Chapter 58 of the General Statutes which required insurance companies chartered in other states or foreign countries to deposit securities with the Commissioner of Insurance for the protection of policyholders. G.S. 58-185 provides:

Upon the securities deposited with the Commissioner

Ingram, Comr. of Insurance v. Insurance Co.

of Insurance by any such insurance company, the holders of all contracts of the company who are citizens or residents of this State at such time, or who hold policies issued upon property in the State, shall have a lien for the amounts due them, respectively, under or in consequence of such contracts for losses, equitable values, return premiums, or otherwise, and shall be entitled to be paid ratably out of the proceeds of said securities, if such proceeds be not sufficient to pay all of said contract holders. When any company depositing securities as aforesaid becomes insolvent or bankrupt or makes an assignment for the benefit of its creditors, any holder of such contract may begin an action in the Superior Court of the County of Wake to enforce the lien for the benefit of all the holders of such contracts. The Commissioner of Insurance shall be a party to the suit, and the funds shall be distributed by the court, but no cost of such action shall be adjudged against the Commissioner of Insurance.

G.S. 58-155.25 provides:

The rights and liabilities of the insurer and of its creditors, policyholders, stockholders, members, subscribers and all other persons interested in its estate shall, unless otherwise directed by the court, be fixed as of the date on which the order directing the liquidation of the insurer is filed in the office of the clerk of the court which made the order, subject to the provisions of G.S. 58-155.29 with respect to the rights of claimants holding contingent claims.

In 1971 the General Assembly enacted Article 17B of Chapter 58 of the General Statutes. Pursuant to this Article the North Carolina Insurance Guaranty Association was created. All casualty insurance companies are members of the Guaranty Association. When a member company is determined to be insolvent by a court of competent jurisdiction, the Guaranty Association bears the responsibility for paying claims against the insolvent company. This obligation is limited to the amount of the covered claim in excess of $100.00, but not exceeding $300,000.00. Payments are financed through membership assessments. Covered claims are defined by G.S. 58-155.45 as follows:

Ingram, Comr. of Insurance v. Insurance Co.

(4)   "Covered claim" means an unpaid claim, including one
      of unearned premiums, which arises out of and is with-
      in the coverage and not in excess of the applicable
      limits of an insurance policy to which this Article ap-
      plies issued by an insurer, if such insurer becomes
      insolvent insurer after the effective date of this Article
      and (i) the claimant or insured is a resident of this
      State at the time of the insured event; or (ii) the prop-
      erty from which the claim arises is permanently lo-
      cated in this State. "Covered claim" shall not include
      any amount due any reinsurer, insurer, insurance
      pool, or underwriting association, as subrogation re-
      coveries or otherwise.

The General Assembly adopted, effective 23 May 1979, what
is called the Quick Access Statute. It is codified as G.S. 58-155.60
and provides in part as follows:

Use of deposits made by insolvent insurer. — Notwith-
standing any other provision of Chapter 58 of the General
Statutes pertaining to the use of deposits made by insur-
ance companies for the protection of policyholders, the
Commissioner shall deliver to the Association, and the
Association is hereby authorized to expend, any deposit or
deposits previously or hereinafter made, whether or not
required by statute, by an insolvent insurer to the extent
those deposits are needed by the Association first to pay
the covered claims in excess of one hundred dollars ($100.00)
as required by this Article and then to the extent those
deposits are needed to pay all expenses of the Association
relating to the insurer.

*   *   *

The Association shall account to the Commissioner and
the insolvent insurer for all deposits received from the
Commissioner hereunder, and shall repay to the Commis-
sioner a portion of the deposits received which shall be
equal to an amount computed by adding the lesser of the
amount of the covered claim or one hundred dollars ($100.00)
for each covered claim. Said repayment shall in no way

Ingram, Comr. of Insurance v. Insurance Co.

prejudice the rights of the Association with regard to the portion of the deposit repaid to the Commissioner. After all of the deposits of the insolvent insurer have been expended by the Association for the purpose set out in this section, the member insurers shall be assessed as provided by this Article to pay any remaining liabilities of the Association arising under this Article.

From the above statutes, it is seen that persons with claims against insolvent insurance companies have two remedies in this state. They may proceed under G.S. 58-185 to enforce a lien against a deposit required of foreign insurance companies or they may be paid by the Guaranty Association. The General Assembly, by the adoption of G.S. 58-155.60 (Quick Access Statute), provided that the Guaranty Association could have advancements to it from the special deposit to pay claims arising against insolvent insurers. The purpose of the Guaranty Association's claim in this case is to have the deposit of Reserve paid to it. The superior court held that G.S. 58-155.60 was prospective only and that since all claims which would arise against the deposit had vested prior to the adoption of the statute, the deposit should not be delivered to the Guaranty Association.

The appellant Guaranty Association contends that G.S. 58-155.60 is procedural, that it merely provides a way for the Guaranty Association to use the deposit to pay claims which would be paid from the deposit and that it should be construed to be retroactive. The appellees contend the Quick Access Statute makes a substantive change in the law and that claimants against the deposit made by Reserve pursuant to G.S. 58-185 will lose some of their rights if the deposit is delivered to the Guaranty Association. The appellees further contend that if the statute is interpreted to apply retroactively, the claimants against the deposit will lose their liens; that the Guaranty Association is not required to pay the first $100.00 of any claim or any amount of a claim over $300,000.00 which would reduce the claimants' rights under G.S. 58-185; that the Guaranty Association is required to pay claims which arise within 30 days of the insolvency which would allow more claims to be paid by the Association than would be paid pursuant to G.S. 58-185,

thus diluting the rights of claimants under G.S. 58-185; and that, if the deposit is delivered to the Guaranty Association, it will not draw interest which could be used to increase the *pro rata* share of the claimants under G.S. 58-185.

We believe the General Assembly intended for G.S. 58-155.60 to be applied retroactively. The statute provides "deposits previously or hereinafter made" shall be delivered to the Guaranty Association. We believe these plain words of the statute show clearly that the General Assembly intended the deposit made by Reserve prior to the enactment of the Quick Access Statute to be delivered to the Guaranty Association. The appellees contend that a retroactive application of the statute makes it unconstitutional since this deprives claimants under G.S. 58-185 of rights to the deposit which were vested in them at the time the statute was adopted. As we read the statute, the appellees would not be deprived of any rights. When G.S. 58-155.60 was adopted, it did not repeal G.S. 58-185. We do not believe the General Assembly intended claimants against insolvent insurance companies to have less rights after the adoption of G.S. 58-155.60. We believe the statutes can be reconciled. G.S. 58-185 provides for a lien against the deposit of Reserve for certain claims against Reserve. G.S. 58-155.60 does not provide that this lien will be lost when the deposit is paid to the Guaranty Association. We hold that the claimants against the deposit will retain their lien rights after the deposit is paid to the Guaranty Association. If they have rights to be paid under G.S. 58-185 which do not coincide with their rights under Article 17B, the Guaranty Association will be liable to pay such claims to the extent they could have been paid from the deposit which was delivered to the Guaranty Association.

We hold that the superior court committed error when it did not order the deposit of Reserve delivered to the Guaranty Association. The claimants under G.S. 58-185 will retain their lien rights and may proceed against the Guaranty Association to the extent of the deposit for any claims they may have had under G.S. 58-185 which are not satisfied by the Guaranty Association.

We reverse and remand for an order consistent with this opinion.

Reversed and remanded.

Judges MARTIN (Robert M.) and HILL concur.